WATERLOO CREAMERY CO. et al. v. NATIONAL BANK OF COMMERCE OF TOLEDO, OHIO, et al.

(District Court, E. D. Michigan, S. D.   June 30, 1922.)

No. 465.

1. Courts ⬦308—Diversity of citizenship does not give jurisdiction, unless all plaintiffs or all defendants reside in the district.

Under Judicial Code, § 51 (Comp. St. § 1033), providing that, where the jurisdiction is founded only on the fact the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant, diversity of citizenship does not give jurisdiction to the District Court, unless either all plaintiffs or all the defendants reside in the district in which the suit is brought.

2. Courts ⬦269—Bill held not one to foreclose lien on property within the district.

A bill, filed by the purchaser of a creamery plant situated within the district, which plant was subject to a vendor's lien, which had been foreclosed under decree of the court and sale directed, alleging that the defendants to the bill, who were plaintiffs in the foreclosure suit, had been in possession of the property for some time, and had made large profits

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from its operation, and had also used up or lost property belonging to plaintiffs, and praying that defendants be required to account fully to plaintiffs, manifestly does not seek to enforce a lien on the property, but seeks personal relief against the defendants, so that the court does not have jurisdiction, under Judicial Code, § 57 (Comp. St. § 1039), by reason of the fact that the property was situated within the district.

In Equity. Suit by the Waterloo Creamery Company and others against the National Bank of Commerce of Toledo, Ohio, and others. On motion to dismiss the bill for want of jurisdiction. Decree entered dismissing the bill.

William J. Hotz, of Omaha, Neb., and Corliss, Leete & Moody, of Detroit, Mich., for plaintiffs.

Smith, Beckwith & Ohlinger, of Toledo, Ohio, F. J. Shields, of Howell, Mich., and E. C. Froehlich, of Toledo, Ohio, for defendants.

TUTTLE, District Judge. This cause is before the court on motion to dismiss the bill of complaint on the ground of lack of jurisdiction of this court over the parties hereto. The only question involved is that of jurisdiction.

[1] One of the plaintiffs is a citizen and resident of Iowa, and the other plaintiff is a citizen and resident of Nebraska. One of the defendants (the defendant receiver hereinafter mentioned) is a resident and citizen of Michigan, and of this district; the other defendants being citizens and residents of New York. As, therefore, not all of the plaintiffs nor all of the defendants are citizens and residents of this district, the jurisdiction of this court cannot be successfully invoked on the ground of diversity of citizenship accompanied by the proper venue, in view of the language of section 51 of the Judicial Code, providing that—

"Where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Comp. St. § 1033; Camp v. Gress, 250 U. S. 308, 39 Sup. Ct. 478, 63 L. Ed. 997.

It is urged by the plaintiffs that the court has jurisdiction herein under the provisions of section 57 of the Judicial Code (formerly section 8 of the Act of March 3, 1875; chapter 137, 18 Statutes at Large, 472). This section provides that—

"When in any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto," service upon the absent defendant or defendants may be obtained by publication in the manner prescribed in such section, and that "upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district."

It is further provided that—

"Said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which has been the subject

of the suit and under the jurisdiction of the court therein, within such district." Comp. St. § 1039.

Unless the court has jurisdiction of the parties to this suit by reason of these provisions of section 57, it is without the necessary jurisdiction herein. Whether this suit is within the scope of said section must be determined by an examination of the allegations of the bill of complaint in the light of the language of the statute referred to.

The material averments in the bill are that the plaintiffs purchased from the defendant Ekenberg Company, a New York corporation, under written contract, certain real estate, buildings, and equipment, comprising two milk product factories situated within this district, for the sum of $50,000, leaving a balance due amounting to $70,000, with interest; that plaintiffs gave said defendant several notes representing said balance, of which notes two were retained by said defendant and the others were negotiated by the latter to the several defendant banks; that later (in some manner not explained in the bill, except by inference) the plaintiffs gave to the defendant Kramer, as trustee for all of the other defendants, as additional security, about $40,000 worth of additional equipment, which had been delivered to said plant by the plaintiffs and installed by them therein after their purchase of such property as aforesaid; that plaintiffs went into possession of said property and operated the same from January 3, 1920, until September 23, 1920, at which latter date there was due and owing to the defendants herein, under said contract of purchase for said property, the sums hereinbefore mentioned; that the legal title to all of said real and personal property remained in said Ekenberg Company and the said Kramer, trustee, and is now vested in them; that on September 23, 1920, the defendants instituted proceedings against the plaintiffs in one of the Michigan state courts for the foreclosure of the said land contract, in which proceedings said defendants procured the defendant Steadman to be appointed receiver of all of said property; that the defendants thereupon immediately took possession of such factories and properties, and have ever since operated the same, and are now in possession thereof, exercising complete control and management thereof; that on April 5, 1921, a decree was entered by said state court in said proceedings in favor of the plaintiffs in said proceedings (the defendants herein) for the payment to the latter of the unpaid balance of the purchase price hereinbefore mentioned, with the interest due thereon, amounting to a sum in excess of $75,000, and for a sale of the said property to satisfy said decree; that the defendants then took possession of said property under said receiver; that said decree provided that said receiver should sell said property and immediately after such sale make return of his proceedings thereunder; that an appeal from said decree was taken by plaintiffs herein to the Michigan Supreme Court, which affirmed such decree and ordered said property sold by said receiver for the use and benefit of the defendants herein on April 13, 1922 (the bill in the present case in this court being filed on April 12, 1922); that from and after September 23, 1920, the defendants herein have assumed to operate said plants and properties as their own, and are now so doing; that during such period said defendants have

taken in as the gross sales of milk products in conducting said business over $500,000, and have dispensed the same as they have seen fit; that during such period said property handled over 24,000,000 pounds of milk; that the total of the fair, reasonable profit thereon would be $36,000; that during such operation and control of said plant by said defendants there have been lost and destroyed 2,400 milk cans, which, on December 23, 1920, were valued at $12,000, which cans belonged to the plaintiff Creamery Company and were excluded from any of the contracts of purchase or the security, as well as by the said decree in the said state court; that the defendants in the unlawful use and occupation of said premises voluntarily took possession of and used certain tools, materials, and supplies, of the value of $5,000, all of which have been consumed and have disappeared in the operation of said properties by the defendants; that the plaintiffs are ready, willing, and able to pay to the defendants herein the amounts due and owing to them as found by the Michigan Supreme Court, less the sums of money which defendants owe to the plaintiffs for the use and occupation of said plants and property, and plaintiffs offer to pay into court the difference found due and owing after an accounting has been had in accordance with the facts alleged in said bill; that one of the defendant banks is in process of liquidation; that the defendant Ekenberg Company "has only recently emerged from the bankruptcy court"; that none of the defendants have any property within the jurisdiction of this court that could be "chargeable with the results of the accounting herein sought against the defendants, except the properties hereinbefore described, which are to be sold"; that "the defendants will proceed forthwith upon the sale of this property to send all the money out of the jurisdiction of this court received in pay for said property," and that the plaintiffs herein "have no plain, adequate, nor speedy remedy at law"; that unless the defendants are restrained "from removing any of the funds derived from the sale of said property, and unless the plaintiffs herein are given decree against the defendants for $53,000 and such other and additional sums, or whatever the sums might be found due upon an accounting, and said sums are ordered paid by the defendants and offset against the sums found due and owing from the plaintiffs herein to the defendants as set forth in the decree of the said state court as hereinabove referred to, that great and irreparable damage will result, and the plaintiffs will be deprived of a plain and adequate remedy for the relief upon the facts set forth herein"; that the bond of the said receiver is inadequate to indemnify the plaintiff, and "said bond was not given in contemplation as indemnity for the strict accounting for the operations of said plants, and the large sums of money and the profits of said plants, but said operations and the appropriation of all the profits and income and the complete control and management thereof was a self-imposed, voluntary assumption of authority and power by the defendants herein, without any authority or right to said income and profits"; that the plaintiffs "only recently learned that the defendants had no intention of making any accounting of any nature or kind whatsoever to the plaintiffs herein for the use, benefit, profit, and income from this property, and have accordingly promptly brought

this action"; that, "unless the relief herein sought is granted to the plaintiff, said defendant will not only have had the exclusive use of all of the income and profits, control, and management of said property since September 23, 1920, but in addition thereto now has decree and judgment for the total amount of the balance of the purchase price with 6 per cent. interest thereon, with the costs of the action, and in addition thereto the expense of the receivership and the attorneys for the receiver."

The prayers for relief are as follows:

That the defendants be restrained "from giving up, turning over, or delivering, one unto the other, of any of the funds or the money, mortgages, or things taken in exchange or in pay for the sale of said property." That the defendants be restrained "from paying out or dispensing with any of the funds, money, property, or things in and around said plant, or the plants themselves, and that said plants and the operation, management, and control thereof be turned over to the plaintiffs herein, or to whomsoever they direct, upon the payment by the plaintiffs upon the difference between the amount due and owing to the defendants from the plaintiffs and the amount to be found due in this action to be due and owing from the defendants to the plaintiffs." "That a strict accounting be had of all the acts and doings of the defendants, and each of them, in connection with the management and control of said property from September 23, 1920, to the date when the plaintiffs are given possession thereunder, and that judgment and decree be entered in favor of the plaintiffs and against the defendants for the reasonable value of the use and benefit of said property in the sum of $36,000, and such other sums as the court might deem just and equitable in the premises, and for the sum of $12,000 for milk cans which have been lost or destroyed during the time that the defendants had possession thereof, and for the further sum of $5,000 for the supplies consumed by the defendants, and for such further and additional sums as may be found owing from the defendants to the plaintiffs herein after an accounting has been had of the amount found due."

[2] It seems clear that this is not a "suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, * * * real or personal property within the district where such suit is brought." Nor is it a suit commenced "to remove any incumbrance or lien or cloud upon the title to" any such property. It is equally plain that an adjudication herein would not, as regards the absent defendants, "affect only * * * property * * * under the jurisdiction of the court * * * within such district." Obviously the purpose of this suit is not to enforce or remove specific liens or incumbrances upon or from specific property located within this district. It does not seek to enjoin the prospective sale under the decree of the state court referred to. On the contrary, it apparently assumes the making of such sale and seeks to restrain the payment or removal from this district of the proceeds of such sale, evidently to enable the parties to come to the accounting sought to be ordered between them. It prays:

"That a strict accounting be had of all the acts and doings of the defendants and each of them in connection with the management and control of said property."

It seeks to set off against the claims of the defendants certain claims which plaintiffs allege are due to them from the defendants. It asks for the sum of $36,000 and upwards, as the "reasonable value of the

use and benefit of said property," which it is alleged that the defendants have had. It seeks the further sum of $12,000 for "milk cans which have been lost or destroyed during the time that defendants had possession thereof." It seeks also the sum of $5,000 "for the supplies consumed by the defendants." Finally, it prays to be allowed against the defendants "such further and additional sums as may be found owing from the defendants to the plaintiffs herein after an accounting has been had."

These prayers of the plaintiffs for relief, and the preceding allegations to which they relate and on which they are based, show, in my opinion, that the gist of this suit is a personal decree against the defendants as individuals, and that this is a proceeding essentially and in substance in personam. It is not, either in form or in substance, a suit to enforce or to remove a "lien upon, or claim to, * * * or cloud upon the title to real or personal property within" this district. If an adjudication were had after the constructive service provided for absent defendants, such adjudication clearly would not "affect only the property." The suit is not "local" in nature, but, on the contrary, is "transitory."

It follows that this suit is not within the provisions of section 57 of the Judicial Code, and this court is without jurisdiction to proceed further herein. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069; Chase v. Wetzlar, 225 U. S. 79, 32 Sup. Ct. 659, 56 L. Ed. 990; Shainwald v. Lewis (D. C.) 5 Fed. 510; Ellis v. Reynolds (C. C.) 35 Fed. 394; Fayerweather v. Ritch (C. C.) 89 Fed. 385; Jones v. Gould (C. C. A. 6) 149 Fed. 153, 80 C. C. A. 1; Nelson v. Husted (C. C.) 182 Fed. 921; Camp v. Bonsal (C. C. A. 4) 203 Fed. 913, 122 C. C. A. 207; Revett v. Clise (D. C.) 207 Fed. 673; Wabash Railroad Co. v. West Side Belt Railroad Co. (D. C.) 235 Fed. 645; O'Neil v. Birdseye (D. C.) 244 Fed. 254; Albert v. Bascom (D. C.) 245 Fed. 149; Vidal v. American Securities Co. (C. C. A. 2) 276 Fed. 855; Grable v. Killits (decided June 9, 1922, by Circuit Court of Appeals for Sixth Circuit) 282 Fed. 185.

A decree must be entered, granting the petition and dismissing the bill.

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes