## FINDLAY v. FLORIDA EAST COAST RY. CO. et al.

### No. 758.

District Court, S. D. Florida, Jacksonville Division.

April 29, 1933.

Marks, Marks, Holt, Gray & Yates, of Jacksonville, Fla., for plaintiff.

White & Case, of New York City, and Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., for defendants Bankers' Trust Co. and Bethune W. Jones.

Root, Clark & Buckner, of New York City, and L'Engle & Shands, of Jacksonville, Fla., for defendants Kenan & Haines.

STRUM, District Judge.

This is a suit in equity, the purpose of which is to procure a construction by this court of item No. 9 of the will of Mary Lilly (Flagler) Bingham, deceased, and to compel the application of the residuary trust fund created by said will, hereinafter mentioned, in financial aid of Florida East Coast Railway Company for the benefit of its creditors.

The bill of complaint, in effect, alleges that, upon the death in 1913 of Henry M. Flagler, the founder of the railway and hotel companies hereinafter mentioned, his wife, Mary Lilly Flagler, as principal beneficiary under her husband's will, became the beneficial owner of substantially all the stocks and properties of Florida East Coast Railway Company, Florida East Coast Hotel Company, and other subsidiary corporations, together with an additional estate of great value consisting largely of stocks and bonds of still other corporations.

Thereafter Mary Lilly Flagler married Robert W. Bingham. She died testate in 1917. Her will was executed September 23, 1916, in West Virginia. It was republished December 8, 1916, in Kentucky. When Mrs. Bingham died she was a citizen of Kentucky. See Com. v. Bingham's Adm'r, 187 Ky. 749, 220 S. W. 727. Administration proceedings were had in Kentucky (see Louisville Trust Co. v. Bingham, 178 Ky. 573, 199 S. W. 58), though the will was also probated in Palm Beach county, Fla., and executors appointed there in addition to the Kentucky administrator.

After devising all her real estate to a niece (exclusive, however, of any real estate, the title to which was vested in the trustees under the will of her late husband, Henry M. Flagler), and making certain other specific bequests, all the residue of her property was vested under the will in two trustees who were directed to pay certain other specific bequests.

Item No. 9 of the will, here involved, is in part as follows: "All the rest and residue of my estate, including all lapsed bequests or devises, shall be held for the term of twenty-one years from the date of this my will by my said Trustees, in trust for the maintenance and administration and development of the Florida East Coast Railway and Florida East Coast Hotel properties (which are

hereinafter called 'principal properties'), and the properties held by subsidiary Companies. * * *"

This item of the will further provides that the trustees shall have power to sell, mortgage, or otherwise obligate the residuary estate, except the stocks and bonds of said "principal properties," and to reinvest the proceeds and income, and concludes with this language: "The primary purpose of this trust being the keeping together of the enterprise into which my beloved husband, Henry M. Flagler, put so much of his energy, ambition and life."

The present trustees are William R. Kenan, Jr., and Lawrence C. Haines, the former a brother of Mrs. Bingham. Both trustees are citizens and residents of the state of New York. Mr. Kenan is also a remainderman under the will, with a contingent interest in the residuary estate, another item of the will providing that, upon the termination of the twenty-one year trust, the residuary estate then remaining shall be divided amongst Mr. Kenan and his two sisters, who are also sisters of the testator. The stocks, and perhaps some of the bonds, of the "principal properties" are a part of the residuary estate held by the trustees, but the residuary estate contains much other property, principally corporate stocks and bonds.

Mr. Kenan, at the time of Mrs. Bingham's death, was and still is president of Florida East Coast Railway Company and Florida East Coast Hotel Company. For many years prior to September 1, 1924, the railway company's properties were subject to a trust deed securing a $12,000,000 bond issue. During the year 1924 the railway company, to fulfill the public demands upon it to supply adequate transportation facilities, embarked upon an extensive improvement and enlargement project, which was financed by a bond issue of $45,000,000, called "first and refunding bonds," secured by a further deed of trust upon all the properties of the railway company then owned or thereafter acquired. Much additional rolling stock and equipment was purchased, financed by equipment trust certificates aggregating $5,080,000, secured by reservation of title to the equipment purchased therewith. This was during a period when the territory served by the railway was experiencing an intensive and abnormal development activity, which produced unprecedentedly heavy public demands upon the railway company for transportation facilities, both freight and passenger.

Plaintiff, a citizen of Colorado, alleges that he is the holder of $70,000 of first and refunding bonds of the $45,000,000 issue secured by the trust deed aforesaid.

Due, it is alleged, to the stress of economic and other conditions in Florida between the years of 1927 and 1931, the existence of which conditions the court judicially notices, the railway company was unable to meet its interest obligations on the $45,000,000 bond issue which matured September 1, 1931. On August 31, 1931, upon the petition of Standard Oil Company, a common creditor, all the properties of the railway company were taken into the custody of this court to prevent dismemberment at the hands of warring creditors. William R. Kenan, Jr., and Scott M. Loftin were appointed receivers of said property, to operate and conserve the railway property upon the orders of this court, which receivership is still in existence. During the five years immediately preceding the appointment of these receivers, the railway operated at a continuing loss aggregating during said period approximately $8,000,000, and was still operating at a loss.

A bondholders' committee was organized to represent the holders of the defaulted bonds, but the plaintiff Douglas C. Findlay elected not to deposit his bonds with the committee, nor to join in its activities.

The $45,000,000 first and refunding bonds are the obligations of the railway company, a corporation, and they, as well as the trust deed securing them, are executed by the corporate officers of the railway company, pursuant to due authority from the board of directors. The trustees of the residuary estate of Mary Lilly (Flagler) Bingham, as such, did not join in the execution of the bonds, nor in the execution of the trust deed securing the same. Nor did the trustees mortgage, or pledge the residuary estate in any manner to secure the payment of the bond issue secured by the trust deed executed by the railway company.

Plaintiff complains that the trustees have refused to aid the railway company out of the funds of the residuary trust estate above mentioned, and that the corporate officers of the railway, one of whom is a trustee of the residuary estate, have mortgaged the properties of the railway company beyond its power to presently repay, and so as to seriously impair the value of its stock, and to jeopardize the existence of the enterprise.

Plaintiff also alleges that the trust deed securing the $45,000,000 bond issue created a specific lien upon all the equitable assets of the railway company, amongst which are said

trust estate, and that the bondholders are entitled to impress the trust estate with the lien of said mortgage, and sequester the assets thereof to meet the bond maturities, interest upon which is in default.

Bankers' Trust Company, a corporation, and Bethune W. Jones, who are made parties defendant to this suit, are trustees under the trust deed securing the $45,000,000 issue of bonds. On May 12, 1932, these trustees filed in this court their suit in equity for the foreclosure of said trust deed, alleging default in interest on September 1, 1931, and March 1, 1932, which suit was consolidated in this court with the original suit of Standard Oil Company, sub nom. Bankers' Trust Company and Bethune W. Jones, as Trustees, v. Florida East Coast Railway Company (consolidated cause No. 757–Eq.). William R. Kenan, Jr., and Scott M. Loftin, already appointed receivers in the original suit, were appointed receivers in the consolidated cause.

By the bill of complaint in this cause, plaintiff, Douglas C. Findlay, questions the activities of the trustees, Bankers' Trust Company and Bethune W. Jones; charges them with a lack of diligence in protecting the rights of the bondholders, and with a lack of judgment and discretion in seeking the foreclosure of the trust deed at this time; further alleging that he cannot with safety intervene in the consolidated cause because he is in disagreement with the propriety thereof and with the relief sought therein; and, therefore, brings this suit, which he asserts is an ancillary suit in aid of the bill of complaint in the consolidated cause, in behalf of himself and other bondholders who have not deposited their bonds with the bondholders' committee. Plaintiff prays that this court construe item No. 9 of Mrs. Bingham's will as creating an equitable asset of the railway company covered by the lien of the trust deed above mentioned; that a separate receiver be appointed in this cause to take into possession the rights of the railway company in and to the residuary trust fund, and to apply the proceeds of that fund in payment of the defaulted interest on plaintiff's bonds and other bonds of said issue.

Prior to the institution of this suit, however, and on May 16, 1932, Scott M. Loftin, as receiver in the consolidated cause, whom plaintiff also seeks to join as a defendant in this suit (as well as his coreceiver, William R. Kenan, Jr.), filed his petition in said consolidated cause requesting this court to grant him leave to bring a suit, or suits, in the courts of the state of New York against William R. Kenan, Jr., and Lawrence C. Haines, as trustees under the estate of Mary Lilly (Flagler) Bingham, and such other persons as might be necessary, for the purpose of obtaining a construction of item No. 9 of Mrs. Bingham's will.

In said petition it was averred that the trustees under the will (Kenan and Haines) are residents and citizens of the state of New York; that the stock certificates and other property held by such trustees are situated in the state of New York, and that the residuary estate under said will has at all times been and was then being administered in the state of New York. There was attached to said petition, as an exhibit, a copy of a resolution of the bondholders' committee, representing a large amount of the bonds of the $45,000,000 issue, requesting that Scott M. Loftin, as receiver, institute and prosecute in the courts of the state of New York the action aforesaid to secure a construction of said will.

There was attached to said petition a consent executed by Mr. William R. Kenan, Jr., coreceiver in the consolidated equity cause, as well as the solicitors of record for Standard Oil Company, Florida East Coast Railway Company, and for Bankers' Trust Company and Bethune W. Jones, as trustees under the trust deed, to the entry of an order conformable with said petition, Mr. Kenan admitting of record that he is willing to have a proper construction of said will in any competent court, and did not desire to hinder, oppose, nor impose any conditions upon the securing of such construction, he being of the view that, since he was a trustee under the will aforesaid, and a necessary party defendant to such suit, his coreceiver, Scott M. Loftin, alone should be given authority to institute the necessary proceedings.

Pursuant to said petition, all parties then before the court consenting, this court on May 16, 1932, prior to the institution of the present suit, entered an order directing said Scott M. Loftin, as coreceiver in the consolidated equity cause, to institute and diligently prosecute such action, or actions, or other legal proceedings as might be necessary or advisable in such court, or courts, of the state of New York, as he might determine, for the purpose of obtaining a judicial construction of said will, and other procedure appropriate to the outcome of said suit.

■ The courts of New York, upon principles of comity, permit a foreign equity receiver to sue in the courts of that state, so long as the rights of domestic creditors are not impaired.

This plaintiff is a citizen of Colorado. See Union Guardian Trust Co. v. Broadway Nat. Bank & Trust Co., 138 Misc. 16, 245 N. Y. S. 2; Mabon v. Ongley Elec. Co., 156 N. Y. 196, 50 N. E. 805; Buck Ridge Coal Mining Co. v. Rosoff Engineering Co., 215 App. Div. 441, 214 N. Y. S. 60.

The defendants William R. Kenan, Jr., and Lawrence C. Haines, as executors and trustees under the Bingham will, were personally served with a subpœna issued in this cause, when said defendants were personally in the Southern judicial district of Florida.

Plaintiff has attempted service upon defendants Bankers' Trust Company and Bethune W. Jones, as trustees under the bond mortgage, and who are citizens of New York state, by serving upon them an order to appear, heretofore made herein. This order was sought and issued under Judicial Code, § 57, 28 USCA § 118, plaintiff asserting that this is a suit to enforce an equitable lien upon or claim to personal property, namely, the property comprising the residuary estate aforesaid, at least a part of which, plaintiff contends, is within this judicial district, so as to enable this court to draw to itself jurisdiction for the purpose of construing the will and administering the trust thereby created, from which premise plaintiff further contends that he is entitled to invoke the statute last mentioned, in order to bring in these absent defendants.

The defendants Kenan and Haines have appeared specially and solely for the purpose of moving to dismiss the cause as to them upon the grounds: (1) that this suit is not within the statute last mentioned, in that it is not a suit to enforce any equitable lien upon or claim to, nor to remove any incumbrance, lien, or cloud upon, real or personal property within this judicial district; (2) that said defendants do not hold as trustees under the Bingham will any property, real or personal, located within this judicial district; and (3) that said defendants are citizens and inhabitants of the state of New York, and plaintiff a citizen of Colorado.

The defendants Bankers' Trust Company and Bethune W. Jones, as trustees under the trust deed, have appeared specially and moved the court to vacate the former order to these defendants to appear herein, issued under the statute last mentioned, and to quash the purported service upon them of such order, upon the grounds that they are citizens of New York; that this cause is not within the purview of the statute mentioned; and that there is no res within this judicial district authorizing a decree in rem by this court. These motions are now before the court for disposition.

There is also before the court for disposition a petition filed by this plaintiff, Douglas C. Findlay, in the consolidated receivership cause, No. 757–Eq., for leave to make defendants in this suit Messrs. Kenan and Loftin, who are the receivers in the consolidated equity suit. In answer to this petition, the receivers have simply submitted the facts to the consideration and judgment of the court, the receivers adopting a neutral attitude. The petition, however, is resisted by some of the parties to the consolidated equity cause.

Also before the court for disposition is plaintiff Findlay's motion for entry of a decree pro confesso against Messrs. Kenan and Haines, as trustees.

The court observes that under the Bingham will Messrs. Kenan and Haines are designated both trustees and executors, and are herein sued as such. The plaintiff, however, can be concerned with them only in their capacity and duties as trustees. Their status and duties as executors are not material to this controversy. See State v. Beardsley, 77 Fla. 803, 82 So. 794, headnotes 7 and 9. See, also, upon the question of venue, Chase v. Wetzlar, 225 U. S. 79, 32 S. Ct. 659, 56 L. Ed. 990; Gilmore v. Robillard (C. C. A.) 44 F.(2d) 295; Amory v. Amory, 95 U. S. 186, 24 L. Ed. 428; Wilson v. Beard (C. C. A.) 26 F.(2d) 860.

Before plaintiff himself can impose any lien or other charge upon the properties of the residuary trust estate for his benefit, he must establish: (1) An enforceable interest in that estate in favor of the railway company; (2) that the railway company pledged that interest to secure the bonds owned by plaintiff; and (3) that under the terms of the trust deed plaintiff is entitled to enforce the pledge of that interest. Before this court can adjudicate those questions, it must appear that this court has jurisdiction of the parties and subject-matter. The venue being questioned, it must also appear that the venue is properly laid in this district.

Upon motion to quash service of substituted process, the court may look to the bill of complaint to ascertain the nature of the cause. Jones v. Gould (C. C. A.) 149 F. 153; Gage v. Riverside Trust Co. (C. C.) 156 F. 1002, appeal dismissed 218 U. S. 690, 31 S. Ct. 224, 54 L. Ed. 1210. The court may also look, not only to the evidentiary matters presented by the record in this case, but also to

other interrelated records of this court in the receivership suits, especially those to which reference is made by the bill of complaint in this suit. Freshman v. Atkins, 269 U. S. 121, 46 S. Ct. 41, 70 L. Ed. 193; Louisville Trust Co. v. Cincinnati (C. C. A.) 76 F. 296.

To establish venue of the suit and jurisdiction of the subject-matter, and to avoid the general requirements of section 51, Judicial Code, 28 USCA § 112 (see Haviland v. Atlantic Coast Line R. Co. [D. C.] 299 F. 955), plaintiff relies mainly upon section 57, Judicial Code (28 USCA § 118). Plaintiff asserts the purpose of the suit to be the enforcement of an equitable lien upon or claim to the residuary trust estate created by Mrs. Bingham, which estate plaintiff asserts is an equitable asset of the railway company and subject to the lien of the trust deed which secures his bonds.

It is plaintiff's contention that this court has jurisdiction in the present suit, or in the consolidated cause, to construe the will and to administer the residuary trust estate, and prays the court so to do. Plaintiff's theory is that, since some of the corporations, notably the railway company, the hotel company, and subsidiary companies, the stock of which is held by the trustees under the Bingham will, own corporate property, real and personal, in the Southern judicial district of Florida, and since said corporations are Florida corporations, having their domicile in Florida, this court has jurisdiction of the subject-matter of the residuary trust estate under the Bingham will, which consists of the capital stock and bonds of the above named and other corporations, including foreign corporations doing business in Florida and elsewhere, so as to authorize this court to construe the will and to compel the trustees under the will to apply the residuary estate in aid of the railway company, if that be found to be the testator's intent.

■ Plaintiff further asserts that the trust estate is an "equitable asset" of the railway company over which this court has jurisdiction in the receivership suit, and that this court is therefore empowered to deal therewith in rem. See In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Guaranty Trust Co. v. Fentress (C. C. A.) 61 F.(2d) 329. Such jurisdiction, of course, exists as to any property of the railway company *in this district.* Porter v. Sabin, 149 U. S. 473, 480, 13 S. Ct. 1008, 37 L. Ed. 815; Booth v. Clark, 17 How. 322, 334, 15 L. Ed. 164. But there would be no such jurisdiction of property situate elsewhere.

Plaintiff charges that it was the testator's intention that the trustees under the will should primarily and at all events use her residuary estate to provide such funds as might be needed for the maintenance, administration, and development of the railway company and hotel company during the twenty-one year trust period, and that to such end all of the residuary estate, except the stock of the "principal properties," should be sacrificed if necessary to meet the financial needs of the railway and hotel companies, called the "principal properties," which necessity plaintiff charges is apparent, as to the railway company, from the facts hereinabove stated.

■■ Plaintiff also alleges *generally* in his bill "that much of the real and personal property which will be thereby affected (i. e., by a construction of the will) is situate within the jurisdiction of this Court," and, again, "that much of the property representing such (trust) fund is within the jurisdiction of this Court, and not within the jurisdiction of the Courts of New York." But these are bare conclusions, which will not serve as a basis of jurisdiction in this court. The specific property situated here should be, but is not, pointed out. McDonald v. Cooper (C. C.) 32 F. 745; Jackson v. Hooper (C. C.) 171 F. 597; General Inv. Co. v. Lake Shore & M. S. R. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244; Jones v. Gould (C. C. A.) 149 F. 153; Chase v. Wetzlar, 225 U. S. 79, 32 S. Ct. 659, 56 L. Ed. 990; Gilmore v. Robillard (C. C. A.) 44 F.(2d) 295. A possibility of property located here cannot constitute such a res as will give the court jurisdiction under section 57, Judicial Code (28 USCA § 118). Harding v. American Sumatra Tobacco Co. (D. C.) 14 F.(2d) 168.

"A plaintiff, suing in a federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." Smith v. McCullough, 270 U. S. 456, 459, 46 S. Ct. 338, 339, 70 L. Ed. 682; Fetzer v. Livermore (D. C.) 15 F.(2d) 462.

Section 57, Judicial Code (28 USCA § 118), mainly relied upon by plaintiff, prescribes procedure for bringing in absent defendants in suits "to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property *within the*

*district* where such suit is brought." This section also, and necessarily (Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565), provides that an adjudication in such suit shall, "as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, *within such district."* (Italics supplied.)

The first matter to be determined, therefore, is whether or not there is a res within the jurisdiction of this court upon which a decree in rem may be imposed, that is, whether the situs of the trust estate, which is the subject-matter of this suit, is in this judicial district so as to empower this court to construe the will and deal with the trust estate according to this court's interpretation of the will, as sought by plaintiff.

 Section 57 of the Judicial Code (28 USCA § 118) "is confined to suits which are local in the sense of relating directly to specific property, real or personal, within the district of suit or partly therein." General Inv. Co. v. Lake Shore & M. S. R. Co., 260 U. S. 261, 43 S. Ct. 106, 114, 67 L. Ed. 244. The section authorizes the procedure with respect only to property which is "lawfully localized within the district, *and there held and enjoyed,* and thus made subject to the court's jurisdiction to clear its title from clouds and liens. * * *" Critchton v. Wingfield, 258 U. S. 66, 42 S. Ct. 229, 231, 66 L. Ed. 467. The power to act in rem upon localized property must rest upon a real, not an imaginary, basis. A suit which is essentially in personam cannot proceed under section 57 whatever incidental relief in rem may be prayed for. To authorize the court to proceed under that section, it is essentially necessary that the property involved be in fact and in substance within the *district,* and within the dominion and control of the court, so that the court may in effect lay its hand upon it, though, of course, the property may be intangible. Chase v. Wetzlar, 225 U. S. 79, 32 S. Ct. 659, 56 L. Ed. 990.

 The residuary trust estate in question consists largely, if not wholly, of intangible property—stocks and bonds of corporations, including stocks (and perhaps bonds) of the railway company and hotel company, which are Florida corporations, as well as stocks and bonds of divers other corporations, both domestic and foreign to the state of Florida. The corporate properties of the railway and hotel corporations, and the subsidiary companies, consist of real estate, tangible personal property, and franchises, in this judicial district, and elsewhere, but title to all these *corporate* properties is, of course, owned and held by these corporations, not by the trustees of the residuary estate. The capital stock (and perhaps some of the bonds) of the railway and hotel corporations belong to the residuary trust estate, but the *corporate properties* of these corporations do not belong to the residuary estate or its trustees.

The properties of the residuary trust estate, therefore, and the authority to use such properties, are held in one right. The corporate properties of the railway, hotel, and other companies, and the authority to use such properties, are held by a different right, even though both rights be exercised by the same individuals. As to the first-named trust properties, these individuals act as trustees under the will, their powers and authority being defined and limited by the will. As to the last-named corporate properties, these individuals act as corporate officers, the two capacities being entirely distinct.

Therefore, without utterly ignoring the corporate entities involved, which, though sometimes done, is not justified in the situation here presented [Santa Fe Electric Co. v. General Electric Co. (C. C. A.) 52 F.(2d) 603; Amos v. Trust Co. (C. C. A.) 54 F.(2d) 286], it cannot be said that the *corporate properties* of the railway company, hotel company, and subsidiary companies located in this district, are the property of the residuary estate. These properties belong to the corporations, the stocks and bonds of which are in turn held by the trustees of the residuary estate, who are citizens and residents of New York. Administration of the residuary estate, as distinguished from the management of the corporate property of the railway, hotel, and other subsidiary companies, has heretofore been and is now being carried on in New York state, the state of citizenship of the trustees.

These trustees of the residuary estate do not, *as such,* manage the railway or hotel companies, although they have a very substantial part in their management as corporate officers of these companies. Whether they were elected such officers by virtue of stock owned by them individually, or whether by virtue of stock held by them as trustees, does not appear, even if that be material.

Neither did the testator in her lifetime own the *corporate properties* of the corporations above mentioned. She was the beneficial owner of the greater part of the capital stock of those corporations, and, perhaps, of some of their bonds, which she bequeathed in

trust to certain named trustees, one of whom, Mr. Kenan, she knew was a citizen and resident of New York.

█ The other original trustee was a Florida citizen. The will provided, however, that, in the event of vacancies amongst the trustees, the remaining trustee, with the approval of the circuit judge embracing St. Johns county, Fla., shall appoint a successor trustee. This state judge does not *make* the appointment. He simply *approves* the appointment made by the surviving trustee. Pursuant to this provision, a citizen of New York was appointed several years ago, with the approval of the state circuit judge mentioned, to succeed the Florida citizen, who had died. In approving the appointment of the successor trustee, the state circuit judge acted, not in the exercise of his normal judicial functions existing under the sovereignty of the state of Florida, but his act was purely a voluntary one by authority of the will. He has no judicial authority, independent of the will, to approve such appointment. So it cannot correctly be said that the successor trustee is the appointee of a Florida state court.

The trust deed securing the first and refunding bonds, under which plaintiff claims, was executed by the Railway Company, a corporation, upon its properties in Florida, and elsewhere, the trustees of the residuary estate not participating, *as such,* in issuing the bonds or executing the trust deed. Said trustees did not in any wise pledge the assets of the residuary estate for the payment of said bonds. There is no authority in the trustees, as such, to mortgage or pledge the corporate property owned by the railway or hotel corporations, and the will specifically forbids the trustees to sell or mortgage the stocks or bonds of the railway and hotel companies, held by such trustees as part of the residuary estate.

█ Even though practically all of the then outstanding capital stock (and perhaps some of the bonds) of the railway corporation were assets of the residuary estate when the latter came into existence, and even though the testator may have contemplated that one or more of the trustees should be corporate officers of the railway corporation, nevertheless, the will specifically defines and limits the powers and duties of the trustees in administering the residuary estate. Such limitations cannot be overriden by the trustees, either in administering the residuary trust estate or in acting as corporate officers of the railway company. All persons dealing with or relying upon the assets of the residuary trust estate do so subject to the limitations of the will as interpreted by the courts, which will, as so interpreted, is the sole authority governing the use or liability of the residuary estate.

█ The *situs* of intangible property depends upon the situation in which the situs becomes material and the purpose for which it is material.

For purposes of taxation, a trust estate of this precise character created by Mrs. Bingham's late husband, Henry M. Flagler, and consisting of some of the identical intangible property here under consideration, legal title to which was vested under Mr. Flagler's will in three trustees, two of whom were citizens of New York and one a citizen of Florida, was held to be situate in New York, not in Florida, upon the principle that mobilia sequuntur personam. State v. Beardsley, 77 Fla. 803, 82 So. 794.

Upon the same principle, the court of last resort of Kentucky held that the estate of Mrs. Bingham, upon her death, became the subject of an inheritance tax in Kentucky, of which state Mrs. Bingham was a citizen and which was the state of her domicile at her death. Com. v. Bingham's Adm'r, 188 Ky. 616, 223 S. W. 999; Id., 199 Ky. 402, 251 S. W. 936; Id., 196 Ky. 318, 244 S. W. 781.

█ Shares of stock can be regarded as personal property located at the domicile of the corporation for purposes of a suit to determine ownership of the stock, or to remove clouds from the title thereto. Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647; Harvey v. Harvey (C. C. A.) 290 F. 653. As was said in Harding v. American Sumatra Tobacco Co. (D. C.) 14 F.(2d) 168, 170: "The situs of the corporate stock is at the domicile [of the corporation] when a contest arises over its disposition." In such cases, the court of the domicile can enforce its decree by directing the corporation to issue new certificates to the party adjudged to be entitled to them. But here the title to the stock is only incidental to an adjudication of the beneficial rights in the residuary trust estate of which the stock is a part. Disposition of such stock, within itself, is not the object of this suit. In this case, an order directing issuance of new certificates to the plaintiff (or for that matter to the receivers in the consolidated equity cause) would not be a proper adjudication of the case, whatever may be the duties of Mrs. Bingham's trustees with reference to the residuary estate.

The corporate stock and bonds themselves are not here in question, as in Jellenik v. Huron Copper Min. Co., supra, and similar cases strongly relied upon by plaintiff. Plaintiff here seeks the benefit of a *trust fund,* of which the stocks and bonds of Florida corporations are a part, and a distribution of said fund according to plaintiff's view of the trustees' duties, which duties are prescribed by and depend upon Mrs. Bingham's will. All rights in the trust fund depend upon the will. The subject-matter of the suit is the trust fund. The title to the stocks and bonds, which are integral parts of the fund, is not here in question. All concede that title to be in the trustees. The primary question tendered by the bill is whether the railway company, or its bond creditors, may have recourse to the trust fund by reason of item No. 9 of Mrs. Bingham's will and the trust deed executed by the railway company. See Critchton v. Wingfield, 258 U. S. 66, 42 S. Ct. 229, 66 L. Ed. 467; Vidal v. South Am. Sec. Co. (C. C. A.) 276 F. 855; Franz v. Buder (C. C. A.) 11 F.(2d) 854.

In Harding v. American Sumatra Tobacco Co., 14 F.(2d) 168, the District Court for the Northern District of Georgia had appointed receivers for a corporation domiciled within that district, but, the corporation having no assets within that district, the court held that it had no power or duty to pass upon a proposed plan of reorganization, which would bind nonresident stockholders and creditors by its adjudication. See, also, Albert v. Bascom (D. C.) 245 F. 149; Wilson v. Beard (C. C. A.) 26 F.(2d) 860; Vidal v. South Am. Sec. Co. (C. C. A.) 276 F. 855; Waterloo Creamery Co. v. National Bank (D. C.) 282 F. 197; Wabash R. Co. v. West Side Belt R. Co. (D. C.) 235 F. 645.

In the recent case of Guaranty Trust Co. v. Fentress (C. C. A. 7) 61 F.(2d) 329, the court had under consideration certain orders of a District Court in Illinois which enjoined divers New York banks from selling stocks of certain Illinois corporations which had been pledged to the New York banks by a corporation then in receivership in the Illinois District Court, the pledged certificates being held in New York. The domicile of both the pledgor corporation and the corporations whose capital stock was pledged were in the Illinois district. In principle it would seem that the Guaranty Trust Case is decisive of the case at bar. The same principles herein urged seem to have been unsuccessfully urged therein by plaintiff. The District Court's orders which enjoined the sale of

pledged stock by the New York banks were reversed for the reason that the District Court of Illinois could have no power over the nonresident New York banks unless the property involved was within the Illinois district. Finding that the pledged certificates were properly held in New York by the New York banks, and that the receivers of the Illinois District Court had neither possession nor right of possession of the certificates, the Court of Appeals concluded that the property involved was not within the Illinois district and the injunctional orders were ordered vacated. The Jellenik Case, and similar cases, are referred to in Guaranty Trust Co. v. Fentress, supra.

█ Plaintiff's bonds are payable in New York. The trustees under the trust deed which secures the bonds are citizens of New York. The trustees of the residuary estate under Mrs. Bingham's will are also citizens of New York. The last-mentioned trustees hold the legal title to the residuary trust estate now in question, consisting largely, if not wholly, of intangible property, as to which it is difficult to see why the maxim that "movables follow the owner" would not apply for the purpose here under consideration. Who the ultimate beneficial owners of the trust estate may be is undetermined and controverted. The title to the *properties* of the trust estate is not in question. Concededly it is in the trustees under Mrs. Bingham's will, who are citizens of New York. The trustees of the residuary estate, as such, are not shown to have title to nor possession of the corporate properties of the railway company, hotel company, nor the subsidiary Florida companies, nor does it sufficiently appear by the bill of complaint that such trustees hold any other property, real or personal, having a situs in this judicial district. The stocks, bonds, and other securities which constitute the estate are themselves in New York, where the estate has been and is now being administered.

█ These and other matters mentioned demonstrate that the residuary trust estate, for the purpose here involved, is not situate in this judicial district so as to authorize a decree in rem against it. Having personal jurisdiction over the railway company, this court could for some purposes deal with its rights, if any, in the trust estate by a decree in personam against the railway company, even though the trust estate itself be beyond the territorial jurisdiction of this court. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Fall v. Eastin, 215 U. S. 1, 30 S. Ct. 3, 54 L.

Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853; Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473. But there being no res in this jurisdiction, a decree in rem cannot be impressed upon it here. This court is without power to construe the will, or to adjudicate by a decree in rem the rights, if any, of the railway company in the trust estate, as against these nonresident defendants, or against other nonresident beneficiaries under the will. Even if the residuary estate is an equitable asset of the railway company, and even if plaintiff's bonds, through the trust deed, are a lien upon it, there being no res in this jurisdiction, there is no basis upon which this court may properly direct the conduct of the nonresident trustees with respect to the trust estate. Any attempt so to do would be a pure usurpation of power. The fact that some of the properties of the trust estate consists of stocks and bonds of Florida corporations does not alter the matter, for reasons already pointed out. Even if plaintiff were to be permitted, as he seeks, to supplant the equity receivers and enforce the alleged rights of the railway in the trust estate, this would still not be a suit to enforce a lien upon or claim to specific property within this district.

The attempted substituted service upon Bankers' Trust Company and Bethune W. Jones, under 28 USCA § 118, must fall.

■■■ The defendants Kenan and Haines are entitled to be sued in the district "whereof they are inhabitants," Judicial Code, § 51, 28 USCA § 112, unless the suit is within one of the exceptions prescribed in the six succeeding sections of the Code. Haviland v. Atlantic Coast Line R. Co. (D. C.) 299 F. 955. The fact that there are other defendants in the suit who are inhabitants of this district does not deprive the defendants Kenan and Haines of the right to insist upon a proper venue. Camp v. Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997. Nor is the venue affected by the fact that the defendants Kenan and Haines have been personally served with process in this district. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935, 36 L. Ed. 768; Southern Pacific Co. v. Denton, 146 U. S. 202, 13 S. Ct. 44, 36 L. Ed. 942; In re Keasbey & Mattison, 160 U. S. 221, 16 S. Ct. 273, 40 L. Ed. 402; Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 S. Ct. 81, 54 L. Ed. 1069; Camp v. Gress, supra. The only possible exception to section 51 under which this suit might be maintained against the defendants Kenan and Haines is section 57, Judicial Code, 28 USCA § 118, and it has

already been demonstrated that the suit is not within that section. The motion of these defendants to dismiss the cause as to them must therefore be granted.

■■■ Plaintiff further contends that this suit is not an original proceeding, but is ancillary to and in aid of the consolidated receivership suit, thereby enabling this court to take jurisdiction. The purpose of the present suit, however, is to assert a right which, if it exists at all, is now held by the receivers of the railway company, and is now being asserted by one of them under the order of this court. Plaintiff alleges in his bill that he is not in harmony with the action taken, nor the relief sought, in the receivership suit, and strongly opposes the propriety thereof. In his brief, plaintiff states the purpose of this suit to be, amongst other things, "to impeach and to obtain correction of certain orders and decrees and to stay certain proceedings in" the consolidated equity cause. The bill vigorously questions the propriety and wisdom of the course taken by the trustees of the bonds in seeking foreclosure of the trust deed. This suit is therefore hostile and adverse to the receivership suit, and not ancillary thereto.

While it is unnecessary to decide the many other points urged in the case, it may be noticed in passing that the trust deed under which plaintiff claims provides (section 16) that no holder of any bond or coupon thereby secured shall have any right to institute an action seeking any remedy thereunder, including that of the appointment of a receiver, unless certain conditions precedent have occurred. The fulfillment of such conditions is not made to appear.

In view of the foregoing decision, it is, of course, inappropriate for this court to express any view as to whether or not the railway company has an enforceable interest in, the residuary trust estate, and, if so, whether or not plaintiff is entitled to enforce that interest. Those questions are not considered.

The motion of Bankers' Trust Company and Bethune W. Jones to vacate the order to appear, and the motion of William R. Kenan, Jr., and Lawrence C. Haines to dismiss the bill as to them, will be granted. Plaintiff's motion for decree pro confesso against the two defendants last named will be denied.

■■■ Without the presence in this suit of the above-named defendants, no useful purpose can be served by permitting the court's receivers, appointed in the consolidated equity cause, to be joined as parties defendant here-

in. To permit their joinder, and require them to litigate herein in this state of the case, would subject the receivership estate to unnecessary and futile expense. An order, therefore, will be entered in the consolidated receivership cause denying leave to join the receivers herein. Jordan v. Wells, 13 Fed. Cas. page 1111, No. 7525.